UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD MORRIS RUSSELL, JR., ) <br> Plaintiff, ) <br> v. ) <br> CAROLYN W. COLVIN, ) <br> Commissioner of Social Security, ) <br> Defendant. ) | NO. SACV 15-898 AGR <br><br> MEMORANDUM OPINION AND ORDER |

Plaintiff Russell filed this action on June 8, 2015. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on July 14 and July 15, 2015. (Dkt. Nos. 13, 14.) On December 23, 2015, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court affirms the decision of the Commissioner.

# I.

## PROCEDURAL BACKGROUND

On January 25, 2012, Russell filed an application for disability insurance benefits, alleging an onset date of December 31, 2010. Administrative Record ("AR") 129-30. The application was denied initially and on reconsideration. AR 72-76, 80-84. Russell requested a hearing before an Administrative Law Judge ("ALJ"). AR 86. On September 24, 2013, the ALJ conducted a hearing at which Russell, a medical expert and a vocational expert testified. AR 25-47. On January 8, 2014, the ALJ issued a decision denying benefits. AR 13-24. On April 13, 2015, the Appeals Council denied the request for review. AR 1-3. This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.

# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

## B. The ALJ's Findings

The ALJ found that Russell met the insured status requirements through December 31, 2016. Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Russell had the severe impairments of diabetes mellitus, hypertension, and past cerebral vascular accident with residual mild hemiparesis involving the left upper and lower extremities secondary to a history of grand mal seizures. AR 15.

The ALJ found that Russell had the residual functional capacity ("RFC") to perform the full range of light work except that he can lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand or walk for six hours in an eight-hour workday with normal breaks; frequently push or pull with the left lower extremity; frequently climb ramps or stairs; frequently balance; occasionally climb ladders or ropes; frequently handle and finger; and cannot withstand exposure to

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

3

hazards such as moving machinery and unprotected heights. AR 16. Russell was able to perform past relevant work as a janitor as actually performed. AR 19-20.

### C. Medical Opinions

Russell contends the ALJ erred in rejecting the opinions of the examining physician, Dr. Karamlou, and his treating physician, Dr. Chu.

An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Even if a treating or examining physician's opinion is contradicted, that opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31. The ALJ can meet this burden by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002).

### Dr. Karamlou

Dr. Karamlou examined Russell on August 18, 2012. He determined, inter alia, that Russell could sit, walk or stand for six hours out of an eight-hour workday, and that he should not walk on uneven terrain. AR 276-80.

In her decision, the ALJ purported to give "significant weight" to Dr. Karamlou's opinion. AR 17, 19. But the ALJ's RFC determination did not include Dr. Karamlou's limitation that Russell should not walk on uneven terrain. *See* AR 16.

Russell contends that the ALJ committed reversible error because she failed to give specific and legitimate reasons for rejecting this portion of Dr.

Karamlou's opinion. According to Russell, the ALJ's error was not harmless because, if the ALJ had credited this walking limitation, he would have met or equaled Listing 1.02A. JS 4-5.

Russell's argument is unpersuasive. As discussed in the section below regarding listed impairments, Listing 1.02A requires the inability to ambulate effectively, and the limitation that Russell should not walk on uneven terrain does not establish ineffective ambulation for purposes of the listings. *See infra.* Thus, even if the ALJ had incorporated this walking limitation in the RFC determination, Russell would not have been found disabled at step three. Consequently, this claim does not warrant reversal. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("Although we have expressed different formulations of the harmless error rule depending on the facts of the case and the error at issue, we have adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.' In other words, in each case we look at the record as a whole to determine whether the error alters the outcome of the case.") (quoting *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008)).

At step four of the sequential analysis, any error was harmless. The ALJ found at step four of the sequential analysis that Russell could perform his past work as a janitor as actually performed, and the record contains no evidence that this job required walking on uneven terrain.[2] *See* AR 177-79 (Russell's work history report); Dictionary of Occupational Titles (DOT) § 381.687-018, 1991 WL 673258; *see also Copeland v. Astrue*, 2009 WL 3233494, at *4 (C.D. Cal. Sept. 30, 2009) (where ALJ failed to consider doctor's opinion that plaintiff could occasionally walk on uneven terrain, any error was harmless because "[t]he occasional ability to walk on uneven terrain would have little or no effect on

---

[2] The court notes that the burden of proof is on the claimant as to step four of the sequential analysis. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

5

Plaintiff's ability to perform the jobs identified by the [vocational expert], as there is no indication that they require the ability to walk on uneven surfaces."); *Moore v. Astrue*, 2009 WL 497503, at *4 (C.D. Cal. Feb. 26, 2009) (where ALJ omitted walking limitation in RFC, any error was harmless because "there [was] no indication that plaintiff's past relevant work... require[d] walking on uneven terrain") .

### Dr. Chu

Dr. Chu filled out RFC questionnaires on January 30, 2012 and April 17, 2013, in which he opined that Russell was extremely limited in his functioning. AR 237-38, 305-06. He also wrote a letter on June 27, 2013, stating that Russell suffered from "multiple medical problems," including diabetic neuropathy, which prevented him from working, performing daily functions, driving, or "even walking and thinking normally." According to Dr. Chu, Russell "should [have been] on permanent disability long ago." AR 295.

In her decision, the ALJ gave specific and legitimate reasons for rejecting Dr. Chu's opinion. The ALJ rejected Dr. Chu's opinion because it was inconsistent with his own treatment notes. AR 18-19. This is a proper ground for rejecting a treating physician's opinion. *See Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003) (holding that a treating doctor's opinion regarding patient's RFC can be discounted if it is unsupported by the doctor's own treatment notes); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancies between a doctor's own notes and conclusions constitute a clear and convincing reason to reject that doctor's opinion.). Dr. Chu saw Russell on multiple occasions, yet there is nothing in his treatment notes indicating that Russell suffers from the extreme limitations set forth in the doctor's opinion. Rather, his treatment notes contain only a few notations regarding complaints of fatigue, dizziness, and some pain. *See, e.g.,* AR 242, 244-45, 251-55, 259, 264, 271-72, 284-85, 291-92, 296-99, 301.

6

The ALJ also rejected Dr. Chu's opinion because it was unsupported by the objective medical evidence. AR 19. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit a treating physician's opinion that is unsupported by medical findings). Dr. Chu stated that Russell suffers from disabling diabetic neuropathy. AR 295. But the record contains no objective evidence that he has developed anything more than mild neuropathy.[3] *See* AR 34, 256-57, 276-80.

Finally, the ALJ rejected Dr. Chu's opinion because it was worded in such a way to suggest that Dr. Chu was actively attempting to assist Russell in obtaining benefits. AR 18. In *Lester*, the Ninth Circuit stated that "[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." 81 F.3d at 832. However, an ALJ may discount the opinion of a treating physician who effectively becomes an advocate for the claimant. *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). Moreover, the ALJ did not rely on this reason alone. *See Molina,* 674 F.3d at 1115 ("[A]n ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'") (quotation omitted).

Accordingly, because the ALJ properly discounted Dr. Chu's opinion, the ALJ did not err.[4]

---

[3] The court notes that Russell's glycosylated hemoglobin, or hemoglobin A1c, levels fluctuated between 7.3 and 8.2. AR 216, 228-29, 246, 260-61, 265-66, 289-90.) In what appears to be a Driver Medical Evaluation form for the Department of Motor Vehicles, Dr. Chu himself described these levels as indicating that Russell's diabetes was "under fair control[]." AR 270.

[4] In the Joint Stipulation, Russell also contends that the ALJ should have recontacted Dr. Chu to obtain clarification regarding the basis of his opinion. This argument is without merit. When the ALJ articulates valid reasons for rejecting an inconsistent, ambiguous or incomplete treating source opinion, or when the record otherwise is adequate to support the ALJ's disability determination, the ALJ is not required to recontact the treating source. *See Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (finding no duty to recontact treating source when ALJ does not make finding that the record was inadequate to make disability determination and articulates valid reasons to discredit report); *Lewis v.*

7

### D. Listed Impairments

Russell contends that his impairments meet or equal the criteria of Listings 1.02A and 11.04B, and thus he should have been found disabled at step three of the sequential evaluation.

At step three, the ALJ must determine whether a claimant's "impairment meets or equals an impairment listed in Appendix 1 to Subpart P of Regulations No. 4." *Tackett*, 180 F.3d at 1099. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. *Id.* "To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment." *Id.* (quoting 20 C.F.R. § 404.1526) (emphasis in original). A claimant bears the burden of proving that his or her impairments meet or equal one of the listed impairments. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

Preliminarily, Russell argues that the ALJ erred by failing to sufficiently explain why he did not meet or equal Listings 1.02A and 11.04B. JS 20-21 (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) and *Lewis v. Apfel*, 236 F.3d 503, 512-13 (9th Cir. 2001)). The court rejects this argument. The ALJ extensively discussed the evidence so that the basis of her determination was clear. *See* AR 15-19; *see also Lewis*, 236 F.3d at 513 (ALJ's listings determination was adequate where he "discussed and evaluated evidence supporting his conclusion"); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) ("It is unnecessary to require the [Commissioner], as a matter of law, to

---

*Apfel*, 236 F.3d 503, 514-15 (9th Cir. 2001) (finding no duty to seek additional evidence when the ALJ did not indicate that he found the record insufficient to properly evaluate the evidence and the evidence did not consistently favor a finding of disability).

8

state why a claimant failed to satisfy every different section of the listing of impairments" where there were specific findings supporting the conclusion.).

### Listing 1.02A

Listing 1.02A describes, in relevant part, a major dysfunction of a joint(s) due to any cause and resulting in the inability to ambulate effectively. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02A. The regulations define ineffective ambulation as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." *Id.* at § 1.00B2b. An example of ineffective ambulation includes "the inability to walk a block at a reasonable pace on rough or uneven surfaces." *Id.*

Here, Russell contends that he was unable to ambulate effectively because Dr. Karamlou found that he should not walk on uneven terrain. However, such a limitation does not establish an inability to ambulate effectively for purpose of the listings. *See, e.g., Moreno v. Astrue,* 444 Fed. Appx. 163, 164 (9th Cir. 2011) (ALJ's RFC determination that limited claimant to walking on even terrain did not establish inability to ambulate effectively under the listings); *Perez v. Astrue*, 831 F. Supp. 2d 1168, 1176 (C.D. Cal. 2011) (medical opinion that claimant should not walk on uneven terrain did not equate to inability to ambulate effectively); *Delavara v. Astrue*, 2013 WL 645626, at *5 (C.D. Cal. Feb. 20, 2013) (ALJ's finding that uneven ground might affect plaintiff's ability to work did not equate to inability to ambulate effectively); *Hernandez v. Colvin*, 2013 WL 1401368, at *4 (C.D. Cal. April 4, 2013) (ALJ's RFC determination that plaintiff cannot walk on uneven terrain does not by itself establish an inability to ambulate effectively for purposes of the listings). The ALJ did not err.

### Listing 11.04B

Listing 11.04B describes a "[c]entral nervous system vascular accident" and requires "[s]ignificant and persistent disorganization of motor function in two

extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.04B. The regulations define "persistent disorganization of motor function" as "paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances . . . which occur singly or in various combinations. . . . The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms." *Id.* at § 11.00C.

Here, Russell argues that he meets listing 11.04B because he suffered a cerebral vascular accident (CVA) and, as a result, he drags his left leg, has an "unbalanced" and "unsteady" gait, decreased muscle strength and numbness in his left arm and leg. JS 27-29. Russell, however, fails to point to any medical records indicating that he suffers from "significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." In fact, the medical expert, Dr. Morse, acknowledged that Russell may have had a CVA in 2005 or 2006 and had a "residual neurological deficit in the left arm and the left leg," but described that deficit as "relatively mild." AR 34-35. Dr. Snider, an examining neurologist, found "some soft findings on the left side to go along with his complaint of left-sided sensory change," but determined that Russell could sit, stand, and walk alone without any support and that his neuromuscular strength appeared intact both proximally and distally in the arms and legs. AR 257. Dr. Karamlou noted that Russell has weakness in his left arm and leg and dragged his left leg when walking, but concluded that he could lift and carry ten pounds frequently and twenty pounds occasionally and he could sit, walk, and stand for six hours out of an eight-hour day. AR 279.

Furthermore, Russell's own statements contradicts the requirements of the Listing. Russell stated that he is able to push his father's wheelchair and lift it into the car, climb one story of stairs, clean his own home, and drive a car for about

10

an hour at a time. AR 164-65. These activities are not consistent with the extreme motor skill impairments described by the Listing. Accordingly, substantial evidence supported the ALJ's finding that Russell does not meet Listing 11.04B.

### D. Duty to Develop Record

Finally, Russell argues that the ALJ erred when he did not seek additional medical evidence to determine the severity of his left-sided hemiparesis. In support of this claim, he points to a note by the consultative examiner, Dr. Karamlou, stating that he has not been properly evaluated for this condition.[5] AR 276.

The ALJ has a "'special duty to fully and fairly develop the record'" in a social security case, even when a claimant is represented by counsel. *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen,* 80 F.3d at 1288).

Here, however, the record before the ALJ was neither ambiguous nor inadequate to allow the ALJ to properly evaluate the severity of Russell's impairments. Although Dr. Karamlou noted that Russell's hemiparesis had not been properly evaluated, Dr. Karamlou took this condition into account in concluding that Russell was capable of lifting and carrying ten pounds frequently and twenty pounds occasionally, and sitting, standing and walking for six hours out of an eight-hour day. AR 276, 279-80. Indeed, there is nothing in the medical record – aside from Dr. Chu's disability opinion, which the ALJ properly

---

[5] In the Joint Stipulation, Russell also contends that the medical expert Dr. Morse stated that Russell's hemiparesis had not been properly evaluated. JS 32. In fact, Dr. Morse made no comment on this issue. *See* AR 33-36.

11

rejected – indicating that Russell is more limited than as set forth in the RFC determination. Accordingly, because the ALJ had adequate evidence to evaluate Russell's impairments, she was not required to further develop the record. *See, e.g., Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (ALJ had no duty to develop the record where the record was adequate to allow for proper evaluation of the evidence); *King v. Comm'r of Soc. Sec. Admin.*, 475 Fed. Appx. 209, 209-10 (9th Cir. 2012) (no duty to develop the record where the evidence was adequate to make a determination regarding the claimant's disability).

## IV.

## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: March 22, 2016

ALICIA G. ROSENBERG
United States Magistrate Judge